**In re Steve Jay CHAPPELL and Julie Lynn Chappell, Debtors.**

**Michael P. Klein, Chapter 7 Trustee, Appellant,**

v.

**Steve Jay Chappell; Julie Lynn Chappell, Appellees.**

**BAP No. WW–06–1435–RKMo.**
**Bankruptcy No. 04–18810.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 2007.

Filed July 11, 2007.

James W. Shafer, Shafer & Bailey, Seattle, WA, for Michael P. Klein, Chapter 7 Trustee.

Marc S. Stern, Seattle, WA, for Steve and Julie Chappell.

Before RIBLET *, KLEIN and MONTALI, Bankruptcy Judges.

## OPINION

RIBLET, Bankruptcy Judge.

We address whether postpetition appreciation of exempt property is to be treated the same under the federal exemption scheme as under a state's exemption scheme. We conclude that controlling Ninth Circuit authority involving state homestead exemptions, which holds that the bankruptcy estate is entitled to postpetition appreciation in excess of the maximum value permitted to be exempted under the statutory authority invoked by the debtor, applies with equal force to exemptions taken under the federal exemption scheme. The factual differences between existing Ninth Circuit authority regarding state exemptions and the federal exemption now in question constitute a distinction without significant difference as to postpetition appreciation. We thus also conclude that a debtor's entitlement to postpetition appreciation is limited to the maximum value of the exemption permitted under the exemption statute invoked.

We REVERSE and REMAND.

## FACTS

Appellee debtors, Steve J. and Julie A. Chappell, filed a Chapter 7 petition on June 30, 2004. Appellant Michael P. Klein was appointed as Chapter 7 trustee.

In Schedules A and D the debtors disclosed ownership of their residence on Camano Island in Washington, which they valued at $350,000 [1] and declared to be encumbered by $328,488.75 in consensual liens. In Schedule C the debtors claimed the $21,511.25 balance of equity as exempt under 11 U.S.C. § 522(d)(1),[2] the federal residence exemption.

The chapter 7 trustee did not object to the claims of exemption within the 30–day period prescribed by Rule 4003(b), or at any time thereafter. No party sought to have the subject residence abandoned pursuant to § 554.

The lender moved for relief from the automatic stay in July 2006, claiming a value of the residence of $350,000 based upon the debtors' June 2004, schedules.

Appellant trustee opposed stay relief on the basis that the value of the residence had increased to $550,000. Accordingly, trustee sought permission to market the residence on the premise that a sale for that amount would result in net proceeds of $140,000, which would suffice to pay all creditors in full and return a surplus to the debtors.

The debtors' response to the lienholder's stay relief motion expressed an ability and

---

* Hon. Robin L. Riblet, Bankruptcy Judge for the Central District of California, sitting by designation.

1. Trustee stipulated to the $350,000 value as of the date of the filing of the Chapter 7 petition.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 ("BAPCPA"), because the case from which this appeal arises was filed before its effective date (generally October 17, 2005).

willingness to cure the arrears, but opposed the trustee's suggestion to market the residence. Debtors contended that at the time of filing their bankruptcy petition there was no equity in the residence beyond consensual liens and their claimed exemption and, thus, the trustee was not entitled to the postpetition appreciation. Furthermore, debtors argued that the trustee's failure to object to the debtors' claims of exemption raised a presumption that there was no equity above the exemption at the time of filing. The debtors requested a hearing regarding the value of the residence prior to it being listed for sale.

In August 2006, appellant trustee filed a Motion to Determine that Non-exempt Equity in the Debtors' Residence was an Asset of this Estate. After hearings held in September 2006, the bankruptcy court ordered that the subject residence was deemed exempt from administration by the trustee. Based on a finding of the $350,000 value at the time of the petition, the bankruptcy court concluded that because the value of the property was equal to or less than the sum of the secured obligations and the exemption claimed, the residence was withdrawn from administration pursuant to § 522(*l*) at the expiration of the time to object to exemptions and there was no remaining interest in the residence for the trustee to administer.

This timely appeal ensued.

## JURISDICTION

The bankruptcy court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1334 over this core proceeding under 28 U.S.C. § 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the postpetition increase in value in the residence beyond the debtors'

exemption remained part of the bankruptcy estate and therefore subject to administration by the Trustee.

(2) Whether the debtors' federal residence exemption claim sufficiently distinguishes this case from binding Ninth Circuit case law holding that debtors are not entitled to the postpetition appreciation in their residences beyond the amount of their homestead exemptions under state law.

## STANDARDS OF REVIEW

■ We review the scope of a statutory exemption de novo, as a question of law. *Gonzalez v. Davis (In re Davis)*, 323 B.R. 732, 734 (9th Cir. BAP 2005), *citing Bloom v. Robinson (In re Bloom)*, 839 F.2d 1376, 1378 (9th Cir.1988). The determination of a homestead exemption based on undisputed facts is a legal conclusion interpreting statutory construction which is reviewed de novo. *Wiget v. Nielsen (In re Nielsen)*, 197 B.R. 665, 667 (9th Cir. BAP 1996), *citing Nadel v. Mayer (In re Mayer)*, 167 B.R. 186, 188 (9th Cir. BAP 1994). Whether property is included in a bankruptcy estate is a question of law also subject to de novo review. *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000), *citing Ramsay v. Dowden (In re Cent. Ark. Broad. Co.)*, 68 F.3d 213, 214 (8th Cir.1995).

## DISCUSSION

We are guided by basic principles of bankruptcy law. Upon the commencement of a voluntary chapter 7 case, all of a debtor's legal and equitable interests in property on that date become the property of the bankruptcy estate. § 541(a). The appointed chapter 7 trustee serves as the official representative of the estate. § 323(a). The trustee is required to collect and reduce to money the property of the estate for which such trustee serves,

and to close the estate as expeditiously as is compatible with the best interests of parties in interest. § 704(1).

Section 522 governs the allowance of exemptions in bankruptcy. Under § 522(b)(1) and (2) a debtor has the option to choose between those exemptions provided under federal bankruptcy law under § 522(d), or alternatively, to choose those exemptions made available under state and federal nonbankruptcy law. Section 522(b)(1) also gives the individual states the ability of legislatively "opting-out" of the federal bankruptcy exemption scheme, in which case a debtor's exemptions are entirely dependent on the state of the debtor's domicile. Washington is not a state that has prohibited its domiciliaries from electing the federal exemptions. 4 ALAN N. RESNICK & HENRY J. SOMMER, EDS., COLLIER ON BANKRUPTCY ¶ 522.01, p. 522–16 n. 2 (15th ed. rev.2007). Thus, the debtors here were entitled to claim, and did, in fact claim, federal exemptions. Pursuant to § 522(d)(1), debtors claimed an exemption in their residence in the amount of $21,511.25.

■ "[T]he critical date for determining exemption rights is the petition date." *Goswami v. MTC Dist. (In re Goswami)*, 304 B.R. 386, 391–92 (9th Cir. BAP 2003), *citing White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924) and *Harris v. Herman (In re Herman)*, 120 B.R. 127, 130 (9th Cir. BAP 1990). "[E]xemptions ... are determined on the date of bankruptcy and without reference to subsequent changes in the character or value of the exempt property[.]" *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001), *aff'd*, 304 F.3d 905 (9th Cir.2002), *citing Herman*, 120 B.R. at 130.

■ Section § 522(*l*) provides that, "[u]nless a party in interest objects, the property claimed as exempt on [the exemption schedule] is exempt." § 522(*l*). A trustee cannot contest the validity of a claimed exemption after expiration of the 30–day period established by Rule 4003(b), even where the debtor has no colorable basis for claiming the exemption. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

It is undisputed that the appellant trustee here did not timely object to the debtors' claims of exemption.

## I

■ Debtors contend that they claimed as exempt the "aggregate" or entire interest in their residence under § 522(d)(1), thereby withdrawing the entire fee from bankruptcy administration. The debtors rely upon *Taylor, Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), and *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994).

■ In making their "aggregate"-interest-in-the-fee argument, Debtors ignore two important facts. First, nothing in the debtors' Schedule C demonstrates an intent to claim to an "aggregate" or entire interest. The value of their claimed exemption is stated simply as "$21,511.25," the arithmetic difference between the value of the residence and the consensual liens. As reasoned in *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992), because the time to object to claimed exemptions is relatively short, "it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules." Any ambiguity in the schedules is to be construed against the debtor. *Id.*

Second, debtors ignore the dollar limit

imposed by § 522(d)(1).[3] As the trustee concedes, the maximum exemption available under § 522(d)(1) is $36,900 (plus any available "wild card" amount under § 522(d)(5)).[4] Hence, the debtor's exemption claim did not exceed the maximum amount available to them.

*Taylor* is not controlling here. In *Taylor*, the debtor claimed as exempt proceeds from a lawsuit and a claim for lost wages, listing the value as "unknown." No dollar limit was specified. The parties agreed that the debtor did not have the right to exempt more than a small portion of the proceeds under either state law or the federal exemptions. After expiration of the 30–day period under Rule 4003(b), and subsequent to learning that the lawsuit had been settled for a substantial sum, the trustee filed a complaint demanding turn over of the settlement proceeds. The United States Supreme Court held that the trustee was precluded from contesting the claim of exemption after the Rule 4003(b) 30–day period had expired, even though the debtor had no colorable basis for claiming the exemption. *Taylor*, 503 U.S. at 643–44, 112 S.Ct. 1644.

Unlike *Taylor*, the debtors here claimed an exemption in a specified amount. The basis for their exemption claim in their residence was valid under § 522(d)(1). The trustee does not contest the validity of a claim of exemption up to the amount permitted by § 522(d).

Equally unavailing is the debtors' reliance upon *Green*, where the debtor claimed as exempt a lawsuit, listing the value as one dollar. Importantly, the trustee in *Green* conceded that listing the lawsuit at a one dollar value indicated that its value was contingent, not that it had an actual present value of one dollar. *Green*, 31 F.3d at 1098–99. The Eleventh Circuit determined that the facts before it were materially the same as those in *Taylor*. The Circuit concluded that because the debtor had exempted the full value of her lawsuit, and because the trustee did not object to her claim of exemption, the debtor was entitled to the entire settlement fund. *Green*, 31 F.3d at 1101.

Thus, both *Taylor* and *Green* are factually distinguishable in that in each instance the debtors expressed an intent to claim the entire proceeds of an asset in an undetermined and unspecified amount as exempt. In the present case before this Panel, the debtors exempted a specific amount, $21,511.25, under a colorable basis, and gave no indication of an intent to claim any more than that specific amount.

Relying on *Owen*, a 1991 United States Supreme Court case which preceded *Taylor*, the debtors posit that the effect of exempting property from the estate is to withdraw that property from the estate and administration by the bankruptcy trustee. *Owen*, however, is not helpful to the debtors' position. The United States Supreme Court in that case addressed a

---

3. Section 522(d)(1) provides:

    The following property may be exempted under subsection (b)(1) of this section:
(1) The debtor's aggregate interest, not to exceed $18,450 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

4. The maximum allowable residence exemption for an individual debtor is $18,450 under § 522(d)(1), plus the additional $975 catchall exemption pursuant to § 522(d)(5), effective April 1, 2004. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed under Section 104(B) of the Code, 69 Fed. Reg. 8482 (Judicial Conference of the United States Feb. 24, 2004), 2004 WL 329158. The dollar limitation applies separately with respect to each debtor in a joint case. § 522(m).

rather narrow issue of judicial lien avoidance, specifically whether a judicial lien could be avoided when the state (in that case, Florida) defined the exempt property so as specifically to exclude the property encumbered by the judicial lien.[5] In explaining elementary bankruptcy principles, the Court stated in dicta that an "exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen,* 500 U.S. at 308, 111 S.Ct. 1833.

In clarifying a debtor's ability to avoid a lien under § 522(f), the Court observed that most of the federally listed exemptions at § 522(d) are explicitly restricted to the "debtor's aggregate interest" or the "debtor's interest" up to a maximum amount, noting that the federal homestead exemption at that time allowed the debtor to exempt "[t]he debtor's aggregate interest, not to exceed $7,500 in value, in ... a residence." *Owen,* 500 U.S. at 310, 111 S.Ct. 1833.

Of particular importance here is the Court's acknowledgment in *Owen* that, at least for purposes of impairment of exemptions, federal and state exemptions are to be given equivalent treatment. "Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently." *Owen,* 500 U.S. at 313, 111 S.Ct. 1833.

In view of the United States Supreme Court's accordance of equivalence of treatment to federal and state exemptions, we disagree with the debtors' contention that by claiming a federal residence exemption they were entitled to an "aggregate" interest in the entirety of their residence.

To do otherwise would stand the bankruptcy system on its head. The purpose of bankruptcy is the payment of creditors through the marshaling and liquidation of the debtor's nonexempt assets, while providing the debtor with "a fresh start." *See Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1203 (9th Cir.2005). If the federal residence exemption of § 522(d)(1) were construed to exempt the entirety of the residence few, if any, debtors would ever choose their state's exemption scheme, limited as it likely would be to a specific dollar cap.[6] The plain meaning of legislation is conclusive, except when literal application "will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). We find no significant reason why Congress would have intended that the federal residence exemption be treated differently than that accorded homestead exemptions under state law.

## II

■ Debtors' approach is also impermissible under controlling Ninth Circuit authorities. Ninth Circuit precedent requires postpetition appreciation in property of the estate to inure to the benefit of the estate. *Vu v. Kendall (In re Vu),* 245 B.R. 644, 647–48 (9th Cir. BAP 2000), *citing Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312, 314–15 (9th Cir.1995); *Hyman,* 967 F.2d at 1321; and *Schwaber v. Reed (In re Reed),* 940 F.2d 1317, 1323 (9th Cir.1991). In each of these cases the

---

**5.** In *Owen,* the judgment lien sought to be avoided was a pre-existing lien. Florida law provided that pre-existing liens were an exception to Florida's homestead exemption.

**6.** *See Hyman,* 967 F.2d at 1319 n. 3, for the Ninth Circuit's discussion of the various forms of state homestead laws.

debtors claimed California homestead exemptions.

The development of the Ninth Circuit's analysis of limitations on the homestead exemption began with *Reed* where the Court held that the filing of a "no asset" report by the trustee did not constitute abandonment of the debtor's homestead and the resulting revestment in the debtor of the entire residence. The trustee was able to withdraw his "no asset" report, sell the residence and capture postpetition appreciation for the benefit of the estate pursuant to § 541(a)(6). The debtor was limited to an exemption in $45,000 of the sales proceeds, the amount he had originally scheduled.

A year after *Reed*, and subsequent to the issuance of *Taylor* by the United States Supreme Court, the Ninth Circuit again addressed the issue in *Hyman*. There the debtors unsuccessfully asserted they were entitled to an exemption in their entire homestead as the trustee had not objected. Citing *Reed* the Court observed that this position had already been rejected. The Court noted that while the debtors' schedule of exempt property listed "homestead," it also listed a value of the exemption of $45,000. It concluded:

> Based on this information, the Hymans did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance.... Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled.

*Hyman*, 967 F.2d at 1319 (citation omitted).

Similarly, the Court rejected the debtors' claim for postpetition appreciation of the residence, again citing to *Reed* and its holding that postpetition appreciation inures to the bankruptcy estate, not the debtor. *Hyman*, 967 F.2d at 1321, *citing Reed*, 940 F.2d at 1323.

*Alsberg* consistently followed *Hyman*, holding that the bankruptcy estate held the interest in the debtor's residence at all times after the filing of the Chapter 11 petition, and concluding that the estate was therefore entitled to any postpetition appreciation in the value of the residence. As was the case in *Reed* and *Hyman*, the debtor in *Alsberg* also claimed the California $45,000 homestead exemption. Debtor similarly argued that he was entitled to any postpetition appreciation in value. In that case, the residence had a value of $259,000 as of the petition date, encumbered by a mortgage of $225,125 as well as tax liens of $86,000. As a chapter 11 debtor-in-possession, Alsberg entered into an agreement to sell the residence for $380,000. After conversion of the case to chapter 7, the chapter 7 trustee obtained court approval for the sale which resulted in net proceeds of $115,000. Not until after the sale did the debtor file an exemption schedule claiming an exemption of $45,000. The debtor moved to compel the trustee to abandon all of the proceeds of sale, arguing, as the debtors do here, that because the mortgage balance and the $45,000 homestead exemption exceeded the value of the residence at the time of filing, the residence was effectively removed from the bankruptcy estate at the time of filing.

The Ninth Circuit affirmed the determination that the estate had an interest in the residence upon filing the bankruptcy and maintained that interest through the time of the sale, stating, "the argument that a homestead exemption operates to remove the residence itself from the bankruptcy estate 'is now deemed foreclosed in

this circuit,'" although noting that all cases considering the argument relied upon provisions of the California statutory homestead exemption. *Alsberg*, 68 F.3d at 314–15 n. 2, *citing Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028, 1030 n. 2 (9th Cir.1994). Thus the estate was entitled to any appreciation in the value and the debtor was allowed only the $45,000 homestead exemption.

In *Vu*, a chapter 11 case converted to chapter 7 nearly seven years after filing, the bankruptcy court simultaneously heard the debtors' motion to compel the trustee to abandon their residence and the trustee's motion to sell the residence. While the trustee sought authorization to sell the residence for $1.9 million, the debtors maintained that the value of the property as of the filing date was $1.1 million, subject to $1.3 million in encumbrances in addition to a homestead claim of $75,000. The bankruptcy court granted the trustee's sale motion and denied the debtors' motion to compel abandonment.

Citing *Alsberg*, *Hyman* and *Reed*, the Panel in *Vu* acknowledged that the Ninth Circuit has consistently held without limitation that, under § 541(a)(6), the estate is entitled to postpetition appreciation.

> Given the clear Ninth Circuit precedent holding without limitation that appreciation inures to the benefit of the estate, we decline to adopt an approach at odds with both that general principle and the purpose behind the strong-arm clause. Thus, under § 541(a)(6), postpetition appreciation is property of the estate without regard to whether there is equity in the property as of the petition date.

*Vu*, 245 B.R. at 649.

Notwithstanding that *Reed*, *Hyman* and *Alsberg* were decided by the Ninth Circuit

in the context of California homestead exemption law, as we noted in *Vu*, the estate's entitlement to postpetition appreciation is not premised upon the applicable exemption scheme. Rather, it is based upon § 541(a)(6). *Vu*, 245 B.R. at 647–48, *citing*, *Alsberg*, 68 F.3d at 314–15; *Hyman*, 967 F.2d at 1321; and *Reed*, 940 F.2d at 1323.[7]

We are bound by the Ninth Circuit precedent established by *Reed*, *Alsberg* and *Hyman*, as well as our prior decision in *Vu*. See, e.g., *Salomon N. Am. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005) ("we regard ourselves as bound by our prior decisions") and *Ball v. Payco–Gen. Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995) ("We will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings."). This precedent is directly applicable to the facts before this panel, regardless of the fact that the debtors here elected the federal residence exemption.

We regard as persuasive two factually similar bankruptcy decisions which applied the reasoning of the *Hyman* line of cases to federal residence exemption claims under § 522(d)(1). *In re Heflin*, 215 B.R. 530 (Bankr.W.D.Mich.1997) and *In re Bregni*, 215 B.R. 850 (Bankr.E.D.Mich. 1997).

In both *Heflin* and *Bregni*, debtors claimed federal residence exemptions in property which had no equity beyond the value of the claimed exemptions at the time of filing the petitions. In *Heflin*, debtor's motion to compel abandonment was denied where debtor claimed a federal exemption of $15,579 and the property

---

**7.** In *Alsberg*, *Hyman*, *Reed* and *Vu* the debtors claimed the maximum amount allowable by the California exemption scheme. In our

case, the debtors limited their exemption to the difference between the value stated and the consensual liens, which was an

amount substantially less than the maximum exemption available. While postpetition appreciation in value of property inures to the benefit of the estate, the estate's interest in the appreciation must be limited by the ability of the debtors to obtain the maximum value of their federal exemptions. As was conceded by the trustee at oral argument, the debtors are jointly entitled to up to $36,900 (plus any available wildcard amount). increased in value postpetition from $16,000 to $40,000. The *Heflin* court noted that while *Hyman* involved the California homestead exemption as opposed to the federal residence exemption, the general principle was the same: Where the debtor claims a specific dollar amount as exempt, the debtor is bound by that amount and, in absence of an amendment, cannot claim that the entire property is exempt. *Heflin,* 215 B.R. at 534. Rather, the debtor's residence and catch-all exemptions were limited to $15,579 as explicitly listed in the debtor's Schedule C.[8]

In *Bregni,* the debtors, married but living separately, and having filed separate chapter 7 petitions, each scheduled a jointly owned condominium and claimed respective $15,000 exemptions pursuant to the federal residence exemption provision of § 522(d)(1). Subsequent to sale, Mrs. Bregni moved to compel the trustee to abandon all of the proceeds, reasoning that because the trustee did not object to her exemption claims, he was time-barred from claiming any interest in the proceeds. She also claimed that any increase in the value of the property since the filing belonged to her, not to the estate.

The bankruptcy court denied the motion to compel abandonment, observing that "the debtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt." *Bregni,* 215 B.R. at 852, *quoting First of Am. Bank v. Gaylor (In re Gaylor),* 123 B.R. 236, 239 (Bankr. E.D.Mich.1991). The court agreed with the reasoning of both *Hyman* and *Heflin* as to the issue of the estate's entitlement to any postpetition appreciation in value, finding that Mrs. Bregni was limited to her $15,000 exemption claim.[9]

We find *Bregni* and *Heflin* persuasive in determining the matter before us.

## III

■ The debtors here are in large part the "victims" of their own inaction. Their chapter 7 petition was filed on June 30, 2004. The record reveals they took no action to extricate their property from the estate until two years later when the secured creditor sought relief from the automatic stay and the trustee expressed his

---

**8.** In *Vu,* we cited *Heflin* with approval. *Vu,* 245 B.R. at 648 n. 7.

**9.** We note that *Olson v. Anderson (In re Anderson),* 357 B.R. 452 (Bankr.W.D.Mich. 2006) declined to follow *Heflin* and *Bregni* and precluded the trustee from compelling a sale of hunting land claimed as exempt under § 522(d)(5). In *Anderson,* the debtors' Schedules A and C both described their asset and their claimed exemption as:

1/2 interest in old cabin. The debtors own a 1/2 interest in an old cabin that may have a total value of about $30,000.
The debtors [sic] 1/2 interest would be $15,000.00.

*Anderson,* 357 B.R. at 457.

The facts in *Anderson* are, therefore, more akin to those of *Taylor* in that the debtors sought to exempt their entire interest in the asset, regardless of its value. On this basis we find *Anderson* distinguishable and not inconsistent with our determination here.

intent to sell. During this period of a rising market the debtors could have moved for abandonment pursuant to § 554(b).[10] Such a motion would either have forced the trustee to sell before he might otherwise have preferred or allowed the debtors to withdraw the property from the estate entirely as being "of inconsequential value and benefit to the estate."[11]

## CONCLUSION

There is no issue as to the debtors' entitlement to the claimed residence exemption amount of $21,511.25, since it is undisputed that the Appellant trustee did not object to the debtors' claimed exemptions. Moreover, the trustee concedes that they jointly were entitled up to $36,900 (plus any available wild card amount). To the extent the debtors claim an exemption in a greater amount, they did not provide sufficient notice of such claim to the trustee and creditors.

The residence became an asset of the bankruptcy estate upon the filing of the petition. Because there was no abandonment and the case has not been closed, the residence remains property of the estate, subject to the unopposed exemption up to the maximum amount permitted by § 522(d). Under well-settled Ninth Circuit law, any postpetition appreciation in value in the residence in excess of the maximum amount permitted by the exemption statute invoked inures to the benefit of the estate. The use of federal exemptions does not work to change that result. Accordingly, the residence remains subject to administration by the trustee. REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**10.** Section 554 provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not adminis-

tered in the case remains property of the estate.

**11.** A similar observation was made by the Court in *Hyman*, 967 F.2d at 1321 n. 11. *See also, Carey v. Pauline (In re Pauline)*, 119 B.R. 727 (9th Cir. BAP 1990) (upholding trial court order requiring chapter 7 trustee to market residence within 60 days or it would be deemed abandoned); and *In re Rolland*, 317 B.R. 402, 409 n. 11 (Bankr.C.D.Cal.2004), stating:

Because post-petition appreciation in the value of estate property accrues to the benefit of the estate, a motion to compel an abandonment may be an appropriate remedy for debtors who believe they are being prejudiced by a trustee's undue delay in administering estate assets.

*Rolland*, 317 B.R. at 409 n. 11, citing *Hyman*, 967 F.2d at 1321 n. 11.